UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNIVERSITY CONSULTATION AND TREATMENT,
CENTER FOR MENTAL HYGIENE, INC.,

                        *Petitioner*,

      - *against* -

LOCAL 1199 UNITED HEALTHCARE WORKERS EAST
SIEU,

                        *Respondent*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

15 Civ. 4472 (PAC)

**OPINION AND ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Petitioner University Consultation and Treatment Center for Mental Hygiene, Inc., (UCC) seeks to vacate an arbitration demand filed by Local 1199 United Healthcare Workers East SEIU (Local 1199). The parties cross-move for summary judgment. Because the parties are bound by a valid and enforceable arbitration agreement that covers the subject matter of their dispute, the Court grants summary judgment in favor of the union.

I.    **Background**

UCC and Local 1199 are parties to a collective-bargaining agreement (CBA), which specifies the procedures for resolving grievances and seeking arbitration. (Dkt. 1, Exh. A at 21–25.) Article 26, Section 1 of the agreement defines a grievance as "a dispute or complaint arising between the parties hereto under or out of this Agreement or the interpretation, application, performance, termination, or any alleged breach thereof." (*Id.* at 22.) The section then outlines the procedure under which an employee must pursue resolution of his grievance. (*Id.* at 22–23.) Section 3 of the article provides that "[a]ny disposition of a grievance from which no appeal is taken within the time limits specified herein shall be deemed resolved and shall not thereafter be considered subject to the grievance and arbitration provisions of this Agreement." (*Id.* at 23–24.) Article 27, Section 1 provides that "[a] grievance, as defined in Article [26], which has not been resolved thereunder may, within twenty-one

1

(21) days after completion of Step 2 of the grievance procedure, be referred to arbitration." (*Id.* at 24.) Article 27, Section 4 further provides that "[t]he Arbitrator shall have jurisdiction only over disputes arising out of grievances, as defined in Section 1 of Article [26]." (*Id.* at 25.)

In July 2014, UCC terminated the employment of a Local 1199 member, Allan Marshall, for cause. (Dkt. 25, ¶ 18.) The union initiated grievance proceedings pursuant to the CBA, and the parties scheduled a grievance hearing for August 2014. (Dkt. 28, ¶ 7.) Marshall failed to appear at that hearing, and the hearing was adjourned. (*Id.*) In subsequent correspondence, the parties discussed rescheduling the hearing. (*Id.* at ¶ 9.) But after several failed attempts to do so, UCC asserted that the hearing had already occurred, specifically the August 2014 meeting that Marshall had failed to attend. (Dkt. 30, ¶¶ 6–7.) Local 1199 filed an arbitration demand April 10, 2015. (Dkt. 29, Exh. 1.) UCC petitioned the Bronx County Supreme Court to vacate the demand, and the union removed the case to federal court. (Dkt. 1.) After the union moved to dismiss the petition (Dkt. 17), the parties agreed to a briefing schedule that effectively converted that motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). UCC then cross-moved for summary judgment. (Dkt. 22.)[1]

## II. Legal Standard

Arbitration is "a matter of contract," and parties cannot be forced to arbitrate a dispute unless they have agreed to do so. *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Whether the parties agreed is a "question of arbitrability" for the Court to decide, unless "clearly and unmistakably" assigned to the arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *see AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 651 (1986). To determine a claim's arbitrability, the Court applies a burden-shifting framework. First, the party seeking to compel arbitration must show that the parties are bound by a "valid" and "enforceable" arbitration

---

[1] To the extent this factual background recites contested facts, those facts are immaterial to the Court's analysis. The parties' agreement that they are bound by the CBA is dispositive. (Dkt. 25, ¶ 5; Dkt. 31 at 3.)

2

agreement. *Granite Rock v. Intern. Broth. of Teamsters*, 562 U.S. ___, 130 S. Ct. 2847, 2858 (2010). If they are, the Court applies standard principles of contract interpretation to determine whether the arbitration agreement unambiguously "cover[s] the dispute in question." *Id.* If it does, that is the end of the inquiry. The Court must enforce the agreement and compel arbitration. But if the agreement is ambiguous, the party seeking to avoid arbitration may rebut the "presumption of arbitrability" with evidence that the parties did not intend to arbitrate the dispute. *Id.* at 2858–59 (noting the "federal 'policy favoring arbitration' of commercial and labor disputes").

That is the extent of the Court's role. If the Court determines that a valid and enforceable arbitration agreement covers a given dispute, the judicial inquiry ends. All other "gateway procedural disputes" arising under the arbitration agreement—such as whether a prerequisite to arbitration has been fulfilled or whether an arbitration demand is timely—are matters for the arbitrator. *Howsam*, 537 U.S. at 84–85 (citing *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557 (1994); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

### III. Discussion

The parties agree that they are bound by the CBA and that it contains a valid and enforceable arbitration clause. They dispute whether that clause covers Marshall's grievances. The Court holds that it does.

UCC argues that the arbitration provision covers only *unresolved* grievances and that—because Marshall failed to pursue arbitration within 21 days—his grievance is *resolved* and thus not covered under the agreement. But UCC's attempt to create a substantive exclusion from arbitration finds no support in the caselaw. Instead, for a claim to be deemed covered by an arbitration agreement, it need merely fall within the "subject matter" of disputes the parties intended to arbitrate. *John Wiley*, 376 U.S. at 557. Any procedural gateway questions that grow out of that dispute, such as whether a party has satisfied all preconditions to arbitration, are matters for the arbitrator. *See Howsam*, 537 U.S. at 84–85.

The Supreme Court's decision in *John Wiley* is instructive. The CBA at issue in that case stated that an employee's failure to file a grievance within the CBA's time limits "shall be construed and be deemed to be an abandonment of the grievance." 376 U.S. at 556 n.11. The employer argued that because the employee seeking arbitration had not timely filed his grievance and had not pursued its resolution through the grievance procedure, his claim was not arbitrable. *Id.* at 556 & n.11. The Supreme Court rejected this argument. The Court reasoned that whether the employee complied with the grievance procedures, including its time limits, would raise questions of fact that "cannot ordinarily be answered without consideration of the merits of the dispute." *Id.* at 557.[2] So to avoid having to parse these "intertwined issues of 'substance' and 'procedure,'" the Court held that "[o]nce it is determined . . . that the parties are obligated to submit the *subject matter* of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Id.* (emphasis added); *see also id.* at 559 ("[P]rocedural disagreements [are] aspects of the dispute which called the grievance procedures into play.").

Here, there is no dispute that the CBA's grievance and arbitration provisions broadly cover employment disputes like Marshall's wrongful termination claim. UCC's attempt to draw a substantive distinction between resolved and unresolved grievances—like the purportedly substantive distinction between abandoned and not-abandoned grievances in *John Wiley*—turns on whether Marshall and UCC complied with the CBA's procedural preconditions to arbitration.

Any attempt by the Court to resolve that issue would require precisely the sort of factual inquiry the Supreme Court foreclosed in *John Wiley*. *See id.* at 557.[3] That is not the Court's role now. Rather, the Court is directed to consider simply whether the parties intended to arbitrate the "subject matter" raised in Marshall's employment claims. *See id.* They did; and they are bound to arbitrate

---

[2] Those questions include "whether grievance procedures or some part of them apply to [the] dispute, whether such procedures have been followed or excused, [and] whether the unexcused failure to follow them avoids the duty to arbitrate." *John Wiley*, 376 U.S. at 557.

[3] Indeed, Local 1199 raises a host of such factual disputes in its brief, including whether UCC complied with the grievance procedures. (Dkt. 27 at 9–11.)

4

Marshall's claims. Compliance with the CBA's grievance and arbitration procedures is a question for the arbitrator.

## IV. Conclusion

The Court GRANTS Local 1199's cross-motion for summary judgment and DENIES UCC's cross-motion for summary judgment. The Clerk is directed to enter judgment and terminate the action.

Dated: New York, New York
       December 16, 2015

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge